IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RANDALL KING**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:08-CV-0153-L** |
| | § | |
| **HAWGWILD AIR, LLC**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss For Lack of Personal Jurisdiction, filed February 18, 2008. After careful consideration of the motion, response, reply, record, and applicable law, the court **grants** Defendant's Motion to Dismiss.

### I.     Factual and Procedural Background

Plaintiff Randall King ("Plaintiff" or "King") filed his Original Complaint on January 25, 2008, in the 116th Judicial District Court of Dallas County, Texas. On January 31, 2008, Hawgwild Air, LLC ("Defendant" or "Hawgwild") removed the case to this court. Plaintiff brings a claim for breach of contract against Defendant for its alleged failure to sell its 1995 Citation Jet, N-526CP, SN-525-0099 ("the Aircraft") to him in accordance with the parties' agreement.

King, a resident of Texas, alleges that he responded to a national advertisement by Hawgwild in October and November 2007 in which it solicited a buyer for the Aircraft. Pl.'s Compl. ¶ 4.2. Pursuant to the advertisement, King contacted the Aircraft's manager, Cliff Alewine ("Alewine"), to negotiate a purchase agreement. *Id.* According to Plaintiff, after Alewine rejected his initial offer of $2.2 million, he verbally agreed to Alewine's counteroffer, a purchase price of $2.25 million. *Id.*

King alleges that he included the purchase price in an e-mail to Alewine that Alewine subsequently executed and faxed back to him. *Id.* The e-mail stipulates that his acceptance of the Aircraft was contingent upon his satisfaction with the results of a pre-buy inspection and repairs made by seller. *Id.* Ex. 1. Plaintiff further alleges that after an initial visual inspection of the Aircraft in Dallas, Texas, Gary Brandon ("Brandon") executed a second agreement containing the same terms as the original e-mail and faxed it back to him. *Id.* ¶ 4.2. According to King, he then deposited $50,000 into escrow as a deposit on the Aircraft. *Id.* ¶ 4.3. In November 2007, following repairs and a second inspection of the Aircraft conducted in Texas, King contends that Hawgwild returned the Aircraft to Arkansas. *Id.* ¶ 4.5. Plaintiff alleges Hawgwild breached the purchase agreement when it removed the Aircraft from Texas and subsequently refused to finalize the sale in December 2007. *Id.*

Defendant is a limited liability company organized under the laws of the state of Arkansas. Until January 2008, the members were the Brandon Joint Revocable Trust ("the Trust") and Scott Bolding ("Bolding"). Bolding, a resident of Arkansas, is now the sole remaining member. Brandon, co-trustee of the Trust, is a citizen of Arkansas, as are all other beneficiaries and trustees. Defendant contends that it is not qualified to do business in Texas and has no registered agent for service of process in Texas. Defendant represents that the Aircraft is registered solely in Arkansas.

## II. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a *prima facie* case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff

may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and

protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport

**Memorandum Opinion and Order – Page 4**

with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

## III.    Analysis

Defendant has moved to dismiss the complaint against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). With its motion, Defendant filed the Declaration of Scott Bolding ("Bolding Declaration") and other supporting documents, including its Articles of Organization, its Operating Agreement, and the Aircraft's registration with the Federal Aviation Administration ("FAA"). With its response, Plaintiff filed an appendix containing the Declaration of Randall King ("King Declaration"), copies of the e-mails from Alewine and Brandon, a statement allegedly faxed to the FAA in support of the Aircraft's registration, a work order engaging Vitesse Aviation to perform repairs on the Aircraft, and a list of the purported flights made by the Aircraft from October 2007 through January 2008. Defendant objects to portions of the King Declaration and to the list of flights.

Because uncontroverted allegations must be taken as true, the court must determine which allegations of jurisdictional contacts are uncontroverted. The parties dispute whether Gary Brandon Enterprises, Inc. ("Brandon Enterprises") is a member of Hawgwild and whether its activities in Texas establish general jurisdiction over Defendant. Defendant also objects to information contained in the King Declaration, but it does not contest any other allegations made by Plaintiff to support specific jurisdiction. Defendant provides documentation of its Operating Agreement and the Bolding Declaration to prove its membership. Because Defendant produces evidence to refute Plaintiff's characterization of its members, the court finds that Brandon Enterprises is not a member

of Hawgwild and that its contacts are not attributable to Defendant. Accordingly, the court examines the pleaded allegations in determining the motion.

### A. General Jurisdiction

Defendant argues that Texas may not exercise general jurisdiction over it because it does not do business in Texas; has no offices, employees, agents, or representatives in Texas; owns no property in Texas; and performs no services in Texas. Defendant also contends that the national advertisements published in October and November 2007 are insufficient to establish general jurisdiction. Defendant argues that its contacts with this forum do not possess the continuous and systematic character necessary to establish a general business presence in the state.

In response, Plaintiff presents the following jurisdictional facts to support general jurisdiction. First, King produces a list of the Aircraft's purported flights to and from Texas over a four-month period from October 2007 to January 2008. Pl.'s App. 13-15. Second, King notes that the Aircraft has undergone repairs in Texas on several occasions. Third, King contends that Brandon Enterprises is a member of Hawgwild and that it engages in real estate-related business in Texas. As discussed above, the court will not consider the alleged contacts of Brandon Enterprises. Finally, King asserts that Bolding's business contacts in Texas, including a dental license and a professorship, establish Defendant's general business presence in the state.

The exercise of general jurisdiction requires continuous and systematic general business contacts between the defendant and the forum state. *Helicopteros*, 466 U.S. at 416. The court must examine the totality of the defendant's contacts with the forum over a reasonable number of years to determine whether the defendant has established a business presence in the forum. *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999), *cert. denied*, 531 U.S.

917 (2000). Furthermore, "[t]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992).

The repair contracts and the Aircraft flights completed in Texas are insufficient standing alone to establish that Hawgwild was doing business in Texas. While "doing business in" the forum state demonstrates a defendant's business presence in the forum, merely "doing business with" the forum state or its residents does not. *Access Telecom*, 197 F.3d at 717; *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008). In *Access Telecom*, the court refused to exercise general jurisdiction over a Mexican telecommunications company that leased telephone circuits and property in Texas, stored telephone poles in Texas, paid taxes in Texas, contracted with numerous U.S. carriers, and derived millions of dollars in revenue from Texas residents over a six-year period. The controlling factor in the court's analysis was its determination that the company's contacts constituted doing business *with* Texas companies but did not amount to doing business *in* Texas. Similarly, in *Johnston*, the court applied the reasoning of *Access Telecom* to reach the same result. Defendant Multidata Systems sold $140,000 in goods and service contracts to ten Texas residents, sent employees to Texas to service equipment and attend trade conventions, and advertised in a national trade journal. 523 F.3d at 611. The court determined that Multidata Systems was not doing business in Texas. *Id.* In sum, regardless of whether a defendant is buying or selling goods and services, merely contracting with residents of the forum, even on a regular basis, will not support general jurisdiction. *See also Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

In this case, Plaintiff alleges that the Aircraft made seventeen trips to and from Texas during the last three months of 2007, but he does not describe the nature or purpose of these trips. Even assuming that these flights were purchased by Texas residents, they demonstrate a short-lived pattern of doing business with Texas residents, not an intention to conduct business in Texas. *Access Telecom*, 197 F.3d at 717. Plaintiff also argues that a repair contract with Vitesse Aviation, a Dallas-based repair shop, demonstrates Hawgwild's general business presence in the state. Even taking Plaintiff's allegations of multiple major repairs as true, these alone do not establish a business presence in Texas as these contacts show only that contracts were formed with Texas residents, not that Hawgwild carried on substantial business activities in the state. *Id.*

Next, Plaintiff attempts to base general jurisdiction on the alleged contacts of Hawgwild's members. Plaintiff confuses theories of citizenship and liability with the minimum contacts analysis. For diversity jurisdiction purposes, the citizenship of a limited liability company (LLC) is identical to the citizenship of its members. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990). In Texas, as in several other jurisdictions, liability may be extended to individual members of an LLC if the protective veil is pierced. *See McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex.App.–Houston [1st Dist.] 2007, no pet.).

Although the Fifth Circuit has not addressed this precise argument, other courts have concluded that the personal jurisdiction analysis differs markedly from the citizenship and liability analyses. *See Mountain Funding, LLC v. Blackwater Crossing, LLC*, No. 3:05CV513-MU, 2006 WL 1582403, at *3 (W.D.N.C. June 5, 2006). The court looks to similar business entities to determine if an LLC member's contacts may be attributed to the LLC for jurisdictional purposes. A partner's contacts are generally attributed to the partnership for the purpose of exerting personal

jurisdiction, but only those contacts that are within the scope of the partnership's business. *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 466-67 (1st. Cir. 1990). In *Dunn v. A/S Em. Z. Svitzer*, 885 F. Supp. 980 (S.D. Tex. 1995), the court declined to extend personal jurisdiction to a joint venture based solely on the contacts of one of its members. *Id.* at 986. The court determined that a member's contacts that were unrelated to the joint venture could not be attributed to other joint venture members or to the joint venture itself. *Id.* Personal jurisdiction over an LLC does not automatically extend to LLC members. *Mountain Funding*, 2006 WL 1582403 at *2. Conversely, personal jurisdiction over an LLC member should not be extended to the LLC based upon the member's unrelated contacts. Bolding's alleged contacts include a dental license and an associate clinical professorship at Baylor Medical Center. None of these contacts relates to the business activities of Hawgwild. The court concludes that these unrelated contacts of one of Defendant's members cannot be attributed to Hawgwild to establish general jurisdiction. Accordingly, after considering Defendant's contacts with Texas in their totality, the court determines that Plaintiff has failed to present a *prima facie* case of general jurisdiction.

   **B.**  **Specific Jurisdiction**

Defendant also argues that King cannot establish specific jurisdiction over it because Hawgwild does not possess minimum contacts with Texas that arise from or directly relate to the cause of action. Hawgwild asserts that its contacts with Texas over the course of negotiations with King were merely a function of King's status as a Texas resident, rather than a "purposeful availment of the benefits and protections of Texas law." Def.'s Mot. to Dismiss ¶ 23. King argues that Hawgwild has numerous contacts sufficient for specific jurisdiction.

King has asserted a claim for breach of contract against Hawgwild. To support the exercise of specific jurisdiction, Defendant's contacts with Texas must relate to or arise from the alleged breach of contract. *Helicopteros*, 466 U.S. at 414 n.8. King presents the following facts in support of jurisdiction: 1) Defendant exchanged e-mails, telephone calls, and faxes with Plaintiff in Texas to negotiate a purchase agreement; 2) Defendant advertised the sale of the Aircraft in Texas; 3) Bolding knew the Aircraft would be based in Texas; 4) Defendant flew the Aircraft to Dallas for two separate inspections and for repairs; 5) Bolding hired Dallas-based pilots for his personal transportation needs; and 6) Defendant left the plane in Dallas for three weeks before returning it to Arkansas. The court will address each jurisdictional fact in turn.

First, Plaintiff presents an exhaustive list of phone calls, faxes, and e-mails exchanged between him and Defendant. It is well established that communications between parties during contract negotiations are insufficient contacts standing alone. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987).

Next, Plaintiff argues that Hawgwild directed its activities to Texas by advertising in a national publication and by knowingly negotiating a sale of its Aircraft to Texas-based buyers. In *Growden v. Ed Bowlin & Assoc., Inc.*, 733 F.2d 1149 (5th Cir. 1984), the court declined to exercise personal jurisdiction over a defendant whose contact with the forum state arose out of a single, isolated sale. The facts of *Growden* are nearly identical to the facts of this case. Like King, plaintiff Growden responded to an advertisement in a national publication offering an aircraft for sale. Defendant Bowlin knew that the plane would be based in the forum state; King also alleges that Hawgwild knew the Aircraft would be based in Texas. The court found that an advertisement in a nationally-circulated publication is not sufficient to subject a defendant to personal jurisdiction. *Id.*

at 1151 (citing *Loumar v. Smith*, 698 F.2d 759, 763-64 (5th Cir. 1983)). The court also dismissed the plaintiff's assertion that knowledge of the aircraft's home base constituted purposeful availment. *Id.* at 1152.

Unlike defendant Bowlin, who was never physically present in the forum state, Defendant Hawgwild transported the Aircraft and its manager to Texas and performed inspections and repairs in Texas. The place of contract performance is a "weighty consideration" in determining specific jurisdiction. *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993), *cert. denied*, 510 U.S. 1116 (1994). Although the two inspection visits and repairs could be characterized as partial performance, they still do not add up to purposeful availment:

> Contracting with a resident of the forum state does not alone support the exercise of jurisdiction over the defendant. Instead we look to the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [defendant] purposefully established minimum contacts with the forum.

*ICEE Distribs., Inc. v. J&J Snack Foods, Corp.*, 325 F.3d 586, 591-92 (5th Cir. 2003) (quoting *Stuart*, 772 F.2d at 1193). The purchase of the Aircraft, had it been finalized, would have ended the relationship between the parties. The parties did not contemplate an ongoing future relationship; the negotiations were confined to a single transaction. *See Growden*, 733 F.2d at 1151; *Hydrokinetics, Inc. v. Alaska Mech.*, 700 F.2d 1026, 1029 (5th Cir. 1983), *cert. denied*, 466 U.S. 962 (1984).

Finally, specific jurisdiction may not be based upon the mere fortuity of Plaintiff's Texas residency. *See, e.g., Holt*, 801 F.2d at 778; *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 497 n.26 (5th Cir. 1974). Bolding's use of King's personal plane and other Dallas-based pilot services were incidental to and dependent upon the negotiations taking place between Hawgwild and King.

Additionally, Defendant's actions in removing the Aircraft from Texas prove no more significant than its decision to bring the Aircraft to Texas. But for the purchase agreement between Hawgwild and King, these events would not have occurred. "A single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Defendant did not reach out to Texas; its involvement in the forum state depended solely on who responded to its national advertisement. Such fortuitous contacts cannot form the basis of specific jurisdiction. *Product Promotions*, 495 F.2d at 496.

The court examines the quality and nature of a defendant's activities with the ultimate aim of determining whether the defendant purposefully availed itself of the privileges afforded by the forum state. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). "The number of contacts with the forum state is not, in itself, determinative." *Hydrokinetics*, 700 F.2d at 1028. Viewing all of Defendant's contacts in their totality, the court determines that it has not purposefully availed itself of the benefits of the forum state such that it could reasonably anticipate being haled into court in Texas. Therefore, the court concludes that Plaintiff has failed to present a *prima facie* case of specific jurisdiction.

        **C.**        **Hawgwild's Objections to the Declaration of Randall King**

The court now considers Hawgwild's objections to the King Declaration. Hawgwild objects to portions of the King Declaration and to Plaintiff's Exhibit E, a list of the Aircraft's purported flights. Hawgwild argues that these portions of the declaration and appendix should be stricken for reasons including impermissible hearsay, lack of personal knowledge, and relevance. The court has

carefully considered Defendant's objections, and the court determines that even if it were to take this evidence into account, such evidence would not alter the court's conclusions. Accordingly, the court **overrules as moot** Defendant's objections to the King declaration.

D.      **Jurisdictional Discovery**

Plaintiff requests an opportunity to conduct jurisdictional discovery should the court find that "sufficient contacts do not exist to maintain personal jurisdiction over Defendant based upon [Plaintiff's] arguments and evidence . . . ." Pl.'s Am. Mem. in Opp. to Def.'s Mot. to Dismiss 15. For this court to grant jurisdictional discovery, a plaintiff must make "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3rd Cir. 2003)). "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.), *cert. denied*, 531 U.S. 979 (2000) (citation omitted). In *Kelly*, the court upheld a denial of jurisdictional discovery because the defendants failed to specify what facts they believed discovery would uncover and how those facts would support personal jurisdiction. *Id.* at 855-56. Likewise, King does not specify what additional evidence discovery will produce to support personal jurisdiction over Hawgwild, and Defendant's motion does not raise issues of fact that could be resolved through further discovery. Plaintiff has also failed to outline why additional discovery would alter the results of the jurisdictional inquiry. Accordingly, the court **denies** Plaintiff's request for jurisdictional discovery.

## IV. Conclusion

For the foregoing reasons, the court determines that Defendant Hawgwild does not have sufficient contacts with the state of Texas to establish general or specific jurisdiction over it. Accordingly, the court **grants** Defendant's Motion to Dismiss and **dismisses** this action **without prejudice.**

**It is so ordered** this 27th day of June, 2008.

Sam A. Lindsay
United States District Judge